UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

NATHANIEL PORTER,

                    Plaintiff,                              Case No. 1:22-cv-311

v.                                                          Honorable Sally J. Berens

HEIDI WASHINGTON et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has paid the full filing fee for this action. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

Plaintiff's complaint is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington and Boatman. The Court will also dismiss, for failure to state a claim, Plaintiff's Fifth Amendment and Fourteenth Amendment due process claims against Defendant Morrison. Plaintiff's Fourteenth Amendment equal protection claim against Defendant Morrison remains in the case.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington and the following LCF personnel: Warden Bryan Morrison and Correctional Officer Unknown Boatman.

As background, Plaintiff alleges that, in 1994, he changed his name to Nathaniel K. Owusu for religious purposes. (ECF No. 1, PageID.3.) Plaintiff did so via a notarized affidavit. (*Id.*) Two years later, the MDOC employees' union successfully lobbied the Michigan legislature to change state law so that prisoners could change their names only through state court proceedings. (*Id.*, PageID.4.) Subsequently, the MDOC updated its name change policy to add "more restrictive language" that Plaintiff believes the MDOC uses so as not to recognize name changes that are not done through the courts. (*Id.*, PageID.4–5.) According to Plaintiff, he has experienced retaliation for his "continuous attempt to exercise recognition of his legally-changed religious name." (*Id.*) He asserts that MDOC records systems only recognize the names under which prisoners have been committed. (*Id.*) Plaintiff also avers that Defendant Morrison was aware of staff members' refusal to recognize prisoners' legally changed names. (*Id.*)

Plaintiff goes on to allege that between 2002 and 2008, various medical providers with the MDOC diagnosed him with degenerative disc disease. (*Id.*) In 2016, Plaintiff was also diagnosed with bilateral sciatica, stemming from his degenerative disc disease. (*Id.*, PageID.8.) Plaintiff's medical provider prescribed Plaintiff the use of a cane and wheelchair. (*Id.*, PageID.9.) In 2016, while incarcerated at the Saginaw Correctional Facility, a medical provider terminated Plaintiff's wheelchair order. (*Id.*) Plaintiff, however, avers that the "cane detail was continued to this day." (*Id.*) Plaintiff has since been approved for decompression and fusion surgery, which is pending scheduling. (*Id.*, PageID.10.)

In 2018, Plaintiff was assigned to be a porter in the B-2 housing unit. (*Id.*) Plaintiff's duties consisted of cleaning the housing unit vestibule, mop closet, and shower. (*Id.*) At the time, each housing unit had an "assigned wheelchair pusher for disabled/handicapped prisoners." (*Id.*) In 2019, however, Classification Director Scott Cline issued a memorandum instructing staff to utilize unit porters as wheelchair pushers if regularly assigned wheelchair pushers were not available. (*Id.*) Plaintiff contends that this change was done via an unofficial memorandum and that he was "never directly notified of the change of his duties as a unit porter." (*Id.*)

For two days prior to February 8, 2019, LCF and surrounding areas had been "experiencing blizzard-like snowing, ice storms, and sub-zero temperatures by what was being called a 'polar vortex,' creating inherently dangerous weather conditions." (*Id.*, PageID.10–11.) Defendant Boatman was assigned to the B-2 housing unit on February 8, 2019. (*Id.*, PageID.11.) At that time, a prisoner who was temporarily disabled from foot surgery required a wheelchair pusher to take him to the evening medication line. (*Id.*) Inmate McClinton was the regularly assigned wheelchair pusher. (*Id.*) Plaintiff claims, however, that Defendant Boatman came to Plaintiff "as he sat on his bunk, with his cane in full view," and ordered him to push the inmate to the medication line. (*Id.*) Plaintiff responded, "I can't push him to healthcare. I walk with a cane; I'm disabled myself." (*Id.*) Defendant Boatman demanded to see Plaintiff's identification card to write a misconduct report for disobeying a direct order. (*Id.*)

As Defendant Boatman walked away, Plaintiff informed him that inmate McClinton was available as a wheelchair pusher. (*Id.*) Defendant Boatman, however, selected inmate Woodard to push the inmate. (*Id.*, PageID.11–12.) Inmate Woodard declined because of his own medical condition. (*Id.*, PageID.12.) He also received a misconduct for disobeying a direct order. (*Id.*) Plaintiff avers that Defendant Boatman "deliberately selected two African-American prisoners

. . . to push prisoner Davis to medication line, notwithstanding their respective medical conditions, consistent with his outstanding reputation of being a blatantly racist C.O." (*Id.*)

The next day, Plaintiff and inmate Woodard were called to the control center for review of the misconduct reports. (*Id.*) Defendant Boatman also wrote a Prisoner Program and Work Assignment Evaluation to remove Plaintiff from his position as a porter. (*Id.*) Plaintiff avers that this evaluation would result in his designation as "unemployable" for a 30-day period. (*Id.*) Plaintiff tried to explain that Defendant Boatman's version of the facts—that Plaintiff stated "It's not my job, I'm not going to do it"—was false. (*Id.*, PageID.13.) Plaintiff, however, was "laid-in from his porter's assignment pending his hearing on the charge of Disobeying a Direct Order." (*Id.*) Plaintiff contends that Defendant Boatman's order was "wholly unreasonable and potentially injurious to [P]laintiff's health." (*Id.*) He avers that Defendant Boatman wrote the misconduct "in retaliation for [P]laintiff's justifiable refusal to comply with his order." (*Id.*) According to Plaintiff, establishing that an order is unreasonable is an affirmative offense to the charge of disobeying a direct order. (*Id.*)

Plaintiff had a hearing before Lieutenant Riley (not a party) on February 19, 2019. (*Id.*, PageID.13–14.) Plaintiff pled not guilty; Riley "postponed the hearing to verify [P]laintiff's claim of physical disability with healthcare." (*Id.*) Shortly thereafter, the hearing resumed, and Plaintiff was found guilty. (*Id.*, PageID.14.) Riley found Plaintiff guilty based upon this statement: "Nurse Practitioner (NP) Hill states that Prisoner Porter has no medical condition that would prevent him from pushing anyone over to healthcare." (*Id.*) Plaintiff contends that Hill was not his assigned medical provider and that her assessment was "limited to her review of [P]laintiff's Special Accommodation Order (SAO) for a cane which superficially checked a box to indicate that [P]laintiff had no work-related restrictions." (*Id.*)

6

Riley sanctioned Plaintiff to three days of loss of privileges (LOP). (*Id.*) Plaintiff was also removed from his porter's assignment and classified as unemployable for 30 days. (*Id.*) As a result of that reclassification, Plaintiff "was confined to his housing unit on weekdays between 0800-1600 hours, for 30 days." (*Id.*)

Plaintiff appealed the disciplinary decision to Defendant Morrison, who was deputy warden at the time. (*Id.*, PageID.15.) Plaintiff attached his relevant medical records, including his SAO and X-rays documenting his condition. (*Id.*) On March 1, 2019, Defendant Morrison upheld Riley's finding of guilt. (*Id.*, PageID.15–16.) Plaintiff claims that Defendant Morrison disregarded his affirmative defense and medical justification for not complying with Defendant Boatman's order. (*Id.*, PageID.16.)

Five days later, however, Defendant Morrison concluded that after speaking with healthcare staff, Defendant Boatman's order was not a reasonable one for inmate Woodard to follow. (*Id.*) Defendant Morrison indicated that inmate Woodard's ticket would be dismissed. (*Id.*) Plaintiff argues that inmate Woodard failed to provide documentary support for his bad knees, whereas Plaintiff's "partial medical records clearly supported the conclusion that the order was unreasonable." (*Id.*)

Plaintiff appealed Defendant Morrison's conclusion to the Warden. (*Id.*, PageID.17.) The Warden failed to respond, thereby upholding the finding of guilt. (*Id.*) Plaintiff contends that Defendant Morrison treated him differently than inmate Woodard despite them being similarly situated. (*Id.*, PageID.25.) Plaintiff believes that Defendant Morrison discriminated against Plaintiff and upheld the finding of guilt because of his "preexisting racial animus against [P]laintiff stemming from his insistence on the recognition of his legal-religious name." (*Id.*, PageID.26.)

Based on the foregoing, Plaintiff asserts violations of his First and Fourteenth Amendment rights.[2] (*Id.*, PageID.18–27.) Plaintiff seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*, PageID.28–29.)

## II.   Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

---

[2] Plaintiff also asserts violations of his Fifth Amendment rights. (ECF No. 1, PageID.18–27.) Presumably, Plaintiff is referencing the Fifth Amendment's due process clause. The Fifth Amendment, however, applies only to claims against federal employees. Here, Plaintiff has sued employees of the State of Michigan. Plaintiff, therefore, cannot maintain his Fifth Amendment claims, and those claims will be dismissed. *See Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.      **Claims against Defendant Washington**

As noted, Plaintiff sues MDOC Director Heidi Washington, but his complaint is completely devoid of any allegations regarding her involvement. Presumably, Plaintiff is suing her because of her position as MDOC Director and because she indirectly supervises Defendants Boatman and Morrison.

Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300

9

(6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts plausibly showing that Defendant Washington encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about her conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendant Washington was personally involved in the events described in Plaintiff's complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's claims against Defendant Washington are premised entirely on respondeat superior liability for the unconstitutional conduct of others, his action fails to state a claim against her.

10

### B.       Defendant Boatman's Status

In his complaint, Plaintiff specifically alleges that Defendant Boatman is now deceased.

(ECF No. 1, PageID.3.) It is evident that "a dead person, *qua* a dead person (as opposed to the

dead person's estate . . .) cannot sue, be sued, or be joined to a lawsuit." *LN Mgmt., LLC v.*

*JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 950 (9th Cir. 2020). Generally, Federal Rule of Civil

Procedure 25 sets forth a means of addressing the circumstance where a party had died—or it is

discovered that a party has died. Federal Rule of Civil Procedure 25 provides:

> If a party dies and the claim is not extinguished, the court may order substitution of
> the proper party. A motion for substitution may be made by any party or by the
> decedent's successor or representative. If the motion is not made within 90 days
> after service of a statement noting the death, the action by or against the decedent
> must be dismissed.

Fed. R. Civ. P. 25(a)(1). The procedural mechanism is triggered by service of a statement noting

the death, commonly referenced as a "suggestion of death." *See* Rule 25 Comment to 1963

Amendment; *Kelly v. Matusiak*, 479 U.S. 805 (1986); *Alexander v. Carter for Byrd*, 733 F. App'x

256, 259 n.3 (6th Cir. 2018); *Blachy v. Butcher*, 190 F.R.D. 428, 431 (W.D. Mich. 1999) *rev'd in*

*part on other grounds* 221 F.3d 896 (6th Cir. 2000).

Rule 25, however, "requires that the deceased was a party to the lawsuit before his death."

*See James v. Benjamin*, No. 3:17-cv-491, 2018 WL 4560744, at *5 (D.S.C. Sept. 24, 2018). Here,

service has not yet been directed; accordingly, Defendant Boatman is not a party to this lawsuit

and Rule 25 does not apply. Irrespective of the applicability of Rule 25, substitution is not possible

because an action asserted against "someone who is already dead . . . is a nullity . . . [and] no

substitution [is] available because there was no action really existent in which he could be

substituted." *LN Mgmt., LLC*, 957 F.3d at 951 (citation omitted); *see also Givens v. Cali. Dep't of*

*Corr. and Rehab.*, No. 2:19-cv-17, 2021 WL 1966086, at *3 (E.D. Cal. May 17, 2021) (noting that

when a putative defendant dies before a lawsuit is filed, the claims against that individual are a "nullity" and must be "dismissed with prejudice").

For these reasons alone, Plaintiff's claims against Defendant Boatman must be dismissed with prejudice. Nevertheless, for the reasons set forth below, Plaintiff fails to set forth a meritorious claim concerning Defendant Boatman.

### C.    First Amendment Retaliation Claim

Plaintiff alleges that Defendant Boatman violated his First Amendment rights by retaliating against him for exercising his freedom of speech by writing a misconduct report, resulting in Plaintiff losing privileges and his work assignment as a porter. (ECF No. 1, PageID.18.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff contends that he engaged in protected activity when he exercised his right to protest Defendant Boatman's unreasonable order because of his own physical disability. (ECF No. 1, PageID.18.) According to Plaintiff, he "engaged in protected conduct when he asserted the affirmative defense of noncompliance with an unreasonable order, per the MDOC Hearing Officer's Handbook." (*Id.*, PageID.20.) Plaintiff recognizes, however, that conduct that violates a legitimate prison regulation is not protected under the First Amendment—or any other

amendment. *See Thaddeus-X*, 175 F.3d at 395; *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (insolence is not protected conduct). Disobeying a direct order is a legitimate Class II misconduct violation. *See* MDOC Policy Directive 03.03.105, Attach. B (eff. July 1, 2018). To the extent Plaintiff claims that Defendant Boatman's order was not valid under MDOC policy, Section 1983 does not provide redress for a violation of prison policies. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's allegations thus support the inference that Defendant Boatman wrote the misconduct because Plaintiff disobeyed a direct order, not because he protested an allegedly unreasonable order. *See Ford v. Curtin*, No. 1:12-cv-367, 2012 WL 2089847, at *6 (W.D. Mich. June 8, 2012) (concluding that "[r]efusing to obey a 'valid and reasonable' order from a prison corrections officer violates MDOC [policy] and is, therefore, not protected conduct").

Even if the Court were to conclude that Plaintiff engaged in protected conduct by protesting the order, Plaintiff has not plausibly alleged that Defendant Boatman acted with retaliatory motive by issuing the misconduct. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are

allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

In his complaint, Plaintiff alleges that when Defendant Boatman ordered him to push inmate Davis to the medication line, Plaintiff "[a]ssum[ed] Defendant Boatman did not see his cane" and responded, "I can't push him (Davis) to healthcare. I walk with a cane; I'm disabled myself." (ECF No.1, PageID.11.) Defendant Boatman then asked to see Plaintiff's identification card "in order to write a misconduct report on him for [d]isobeying a [d]irect [o]rder." (*Id.*) He then walked away from Plaintiff's cell. (*Id.*) While temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), Plaintiff's complaint is devoid of facts suggesting that Defendant Boatman wrote the misconduct solely because Plaintiff protested the order based on his physical disabilities. As noted *supra*, Plaintiff has not sufficiently alleged that he even engaged in protected conduct. Nothing in the complaint leads the Court to infer that Defendant Boatman believed that his order was unreasonable at the time he gave it. Rather, Plaintiff's complaint suggests only that Defendant Boatman issued the misconduct because Plaintiff did, in fact, disobey his direct order. The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claim against Defendant Boatman.

### D.   Fourteenth Amendment Claims

#### 1.   Due Process

Plaintiff contends that Defendant Boatman violated his Fourteenth Amendment due process rights by issuing an allegedly false misconduct. He also appears to suggest that Defendant Morrison violated his due process rights by upholding the finding of guilt despite Plaintiff's

medical records in support of his argument that Defendant Boatman's order would have been unreasonable for him to obey.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials

15

must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff has not included copies of any misconduct reports or proceedings with his complaint. He alleges, however, that Defendant Boatman wrote him a misconduct for disobeying a direct order, and that he was found guilty of the misconduct. Under MDOC Policy Directive 03.03.105, disobeying a direct order is a Class II misconduct. *See* MDOC Policy Directive 03.03.105, Attach. B. Class II misconducts are minor misconducts for which Plaintiff could not have been denied good time or disciplinary credits. *See id.*, ¶¶ B, AAAA. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v.*

*Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Plaintiff also cannot allege that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 486–87. Plaintiff contends that he was placed on LOP status for three days. Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E (eff. July 1, 2018). Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs or activities under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause was not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (concluding that prisoners have no constitutional right to rehabilitation); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (finding that participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (concluding that prisoners have no constitutional right to rehabilitative services). Plaintiff also avers that he lost his job as a porter and was classified as "unemployable" for a period of 30 days. Plaintiff, however, has no liberty or property interest in prison employment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (concluding that district court properly dismissed as frivolous the plaintiff's claim that he was fired

from his prison job); *Newsom v. Norris,* 888 F.2d 371, 374 (6th Cir. 1989) (discussing that there is no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job.").

For the foregoing reasons, Plaintiff fails to state Fourteenth Amendment due process claims against Defendants Boatman and Morrison. Those claims will, therefore, be dismissed.

### 2.    Equal Protection

Plaintiff also contends that Defendant Morrison violated his Fourteenth Amendment equal protection rights. (ECF No. 1, PageID.22.) Plaintiff avers that Defendant Morrison treated him differently than inmate Woodard, who was similarly situated, by dismissing his guilty finding but refusing to dismiss Plaintiff's guilty finding. (*Id.*)

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Plaintiff's allegations do not implicate a fundamental right. Plaintiff instead contends that Defendant Morrison treated him differently from inmate Woodard, despite being similarly situated, without any rational basis for the difference. Plaintiff alleges that Defendant Morrison treated him differently because of his "preexisting racial animus against [P]laintiff stemming from [Plaintiff's] insistence on the recognition of his legal-religious name." (ECF No. 1, PageID.26.) While Plaintiff references "racial animus," he does not base his equal protection claim upon the fact that he is a member of a suspect class. Indeed, Plaintiff explicitly notes that both he and inmate

18

Woodard are African-American. (*Id.*, PageID.12.) Rather, Plaintiff specifically asserts that he is raising a "class of one" equal protection claim. (*Id.*, PageID.22.)

　　To prove an equal protection claim in a class-of-one case, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, [he] must demonstrate that [he] "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

　　The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'") (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011));

*see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

As noted above, Plaintiff alleges that he and inmate Woodard both received misconducts for disobeying a direct order when they refused to push inmate Davis because of their physical disabilities. (ECF No. 1, PageID.22.) Both were found guilty at their misconduct hearings. (*Id.*) On appeal, Plaintiff argued that Defendant Boatman's order was unreasonable because of his physical disability. (*Id.*, PageID.23.) Despite Plaintiff's medical records, Defendant Morrison upheld the finding of guilt. (*Id.*, PageID.24.) Shortly thereafter, however, Defendant Morrison dismissed inmate Woodard's guilty finding after speaking with healthcare and concluding that Defendant Boatman's order was not a reasonable one for inmate Woodard to follow. (*Id.*, PageID.25.) Given these allegations, the Court concludes that Plaintiff has set forth a plausible Fourteenth Amendment equal protection class of one claim against Defendant Morrison.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington and Boatman will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Fifth Amendment and Fourteenth Amendment due process claims against Defendant Morrison. Plaintiff's Fourteenth Amendment equal protection claim against Defendant Morrison remains in the case.

An order consistent with this opinion will be entered.

Dated: June 7, 2022                                    /s/ Sally J. Berens
                                                      SALLY J. BERENS
                                                      U.S. Magistrate Judge